1

**MUNCK WILSON MANDALA, LLP**
Yael Tobi (SBN 231425)

2

ytobi@munckwilson.com

3

1925 Century Park East, Suite 2300
Los Angeles, California 90067

4

Telephone: (310) 286-0377

5

Facsimile:  (972) 628-3613

6

7

Attorneys for Claimant
MAREK RUDAK

8

9

**UNITED STATES DISTRICT COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12

UNITED STATES OF AMERICA,

Case No. 2:21-CV-07505-MCS-JEM

13

Plaintiff,

14

v.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAIMANT MAREK RUDAK'S MOTION TO DISMISS THE UNITED STATES OF AMERICA'S VERIFIED COMPLAINT FOR FORFEITURE**

15

16

$340,000.00 IN U.S. CURRENCY AND MISCELLANEOUS PRECIOUS ITEMS,

17

18

Defendants.

19

20

Date:       March 7, 2022 (Monday)
Time:       9:00 a.m.
Location: Department 7C

21

22

Judge: Hon. Mark C. Scarsi

23

24

Complaint Filed: September 20, 2021

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF FACTS .....................................................................5

III.  STANDARD OF REVIEW ....................................................................7

   A.   Stringent Pleading Requirement in Forfeiture Actions ..................8

IV.   ARGUMENT .........................................................................................9

   A.   **The Government Did Not Meet Its Burden of Showing That Claimant's Property Was Traceable to Unlawful Activity** ......................................9

   B.   **The Government Failed to Assert the Existence of an Underlying Criminal Act** .......................................................................................13

      1.   The Government Fails to State a Claim for Violation of the Controlled Substances Act Warranting Forfeiture ...............................................13

      2.   The Government Fails to Assert a Claim for Fraudulent Racketeering Warranting Forfeiture ...........................................................................14

      3.   The Government Fails to Assert a Claim for Money Laundering ...........15

      4.   The Complaint Fails to Assert a Claim for Conspiracy to Launder Money That Warrants Forfeiture .......................................................................16

   C.   **Claimant is an Innocent Owner and the Government Had No Basis to Forfeit His Property** .............................................................................17

V.    LEAVE TO AMEND SHOULD BE DENIED ...........................................18

VI.   CONCLUSION ......................................................................................19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
5
   556 U.S. 662 (2009)..................................................................................8

6

*Bell Atlantic Corp. v. Twombly,*
7
   550 U.S. 544 (2007)..................................................................................8

8

*Conservation Force v. Salazar,*
9
   646 F.3d 1240 (9th Cir. 2011) ................................................................7

10

*Jones v. Community Redevelopment Agency,*
11
   733 F.2d 646 (9th Cir. 1984) ..................................................................8

12

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ..................................................................8

13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
14
   806 F.2d 1393 (9th Cir. 1986) ..............................................................18

15

*U.S. v. $49,576.00 in U.S. Currency,*
16
   116 F.3d 425 (9th Cir. 1997) ................................................................10

17

*United States v. $215,300 U.S. Currency,*
18
   882 F.2d 417 (9th Cir. 1989) .............................................................1, 9

19

*United States v. $405,089.23 U.S. Currency,*
20
   122 F.3d 1285 (9th Cir. 1997) ..............................................................10

21

*United States v. $5,644,540.00 in U.S. Currency,*
22
   799 F.2d 1357 (9th Cir.1986) ...............................................................10

23

*United States v. $59,520 U.S. Currency,*
   2015 WL 12732455 (C.D. Cal. July 22, 2015)......................................9

24

*United States v. 3,168,400 in U.S. Currency,*
25
   2017 WL 10591752 (C.D. Cal. Dec. 5, 2017).....................................1, 8

26

*United States v. Aguilar,*
27
   782 F.3d 1101 (9th Cir. 2015) ...............................................................9

28

*United States v. Alghazouli*,
   517 F.3d 1179 (9th Cir. 2008) ...................................................................16

*United States v. Dickerson*,
   873 F.2d 1181 (9th Cir.1988) ...........................................................10, 12

*United States v. Gough*,
   152 F.3d 1172 (9th Cir. 1998) .................................................................15

*United States v. Moytez-Pineda*,
   312 Fed. Appx. 859 (9th Cir. 2009)........................................................13

*United States v. One 56–Foot Yacht Named Tahuna*,
   702 F.2d 1276 (9th Cir.1983) .................................................................10

*United States v. Real Prop. Located in Monrovia, California*,
   217CV02155RGKAJW, 2017 WL 8232409 (C.D. Cal. Nov. 16, 2017)...........15

*United States v. Riverbend Farms, Inc.*,
   847 F.2d 553 (9th Cir.1988) .....................................................................9

*United States v. Smithkline Beecham Clinical Labs.*,
   245 F.3d 1048 (9th Cir. 2001) .................................................................18

*United States v. U.S. Currency, $30,060.00*,
   39 F.3d 1039 (9th Cir. 1994) ........................................................ *passim*

*United States v. Vargas-Castillo*,
   329 F.3d 715 (9th Cir.2003) ...................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................15

**Statutes**

18 U.S.C. § 981 .............................................................................................9

18 U.S.C. § 981(a)(1)(A), (C).......................................................................9

18 U.S.C. § 983(d)(1)..................................................................................17

18 U.S.C. § 983(d)(2)(A)(i) ...................................................................17, 18

18 U.S.C. § 1956 (a)(1)...............................................................................15

18 U.S.C. § 1956 (a)(1) (A)(i), (a)(1)(B)(i) ................................................15

18 U.S.C. § 1956(c)(7)(A) ..............................................................15

18 U.S.C. § 1957(a) .......................................................................16

18 U.S.C. §1961(1)(D) ...........................................................14, 15

21 U.S.C. §§ 841(a)(1), (2) ...........................................................13

21 U.S.C. §§ 841(a)(1), (b)(1)(C) .................................................14

21 U.S.C. § 881 .........................................................................1, 9

21 U.S.C. § 881(a)(6) ....................................................................10

Controlled Substances Act ...................................................4, 13, 14

**Other Authorities**

Charles A. Wright & Arthur R. Miller, 5 Federal Practice and
    Procedure § 1215 (3d ed.) .......................................................8

Federal Rule of Evidence 201 ..........................................................8

Federal Rules of Civil Procedure 8(a) ..............................................8

Federal Rules of Civil Procedure 12(b) ..........................................18

Federal Rules of Civil Procedure 12(b)(6)........................................8

Federal Rules of Civil Procedure G(2) ............................................9

Federal Rules of Civil Procedure G(2)(f) .........................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

Claimant Marek Rudak ("Claimant") submits the following memorandum in support of his motion to dismiss the United States of America's (the "Government") Verified Complaint for Forfeiture ("Complaint").

## I.  INTRODUCTION

The Complaint is facially devoid of any facts warranting forfeiture.  This action must be dismissed with prejudice, and Claimant's property must be promptly returned to him to stop any further governmental abuse of power and violations of Claimant's fundamental constitutional rights.

To safeguard against government abuse and overreach, there is a "heightened pleading" requirement—"beyond the Iqbal/Twombly standard"—when the Government asserts a forfeiture in rem action, such as this case.  *United States v. 3,168,400 in U.S. Currency*, 2017 WL 10591752 , at *3 (C.D. Cal. Dec. 5, 2017). Given that this action seeks forfeiture under 21 U.S.C. § 881, and given the limited allegations in the Complaint relating to the Claimant and his activities, the Government must plead facts that support a reasonable belief that the property the Government seized was exchanged or intended to be exchanged for drugs. *See United States v. $215,300 U.S. Currency*, 882 F.2d 417, 418 (9th Cir. 1989). The Complaint completely fails to satisfy this standard.

The Complaint fails to allege any connection or nexus between Defendant, the $340,000.00 in U.S. Currency and Miscellaneous Precious Items ("Claimant's Property"), belonging to Claimant, and any specific unlawful activity as to which the Government seeks forfeiture.  In fact, the Government fails to allege the existence of any current unlawful activity involving Claimant.  Instead, the bulk of the allegations are wholly irrelevant and historic and have been injected simply to prejudice and mislead the Court.  For example, the initial twenty-two paragraphs discuss U.S. Private Vaults ("USPV") and various criminals who stored their property at USPV—all of whom are entirely unrelated to Claimant.  Indeed, the

Government's basis for seeking forfeiture of Claimant's Property is simply based on the following five allegations:

(1) Guilt by association – vaults at USPV have been used in the past by some individuals who purportedly committed crimes. However, most of the vaults were not used by criminals.[1] Claimant is not a criminal. There are no criminal allegations against him. There is no criminal investigation pending against him. And, there is no association between Claimant and USPV (or its owners). Claimant merely rented a safety deposit box in January 2020, due to his concerns about potential uncertainties involving financial institutions and mandated closures during the COVID-19 pandemic.

(2) Claimant's alleged prior arrests. While the Complaint raises Claimant's purported prior arrests, astonishingly it intentionally omits that these arrests took place *over 16 years ago.* Moreover, Claimant was never tried for any crime. Claimant does not have *any* felony convictions. Claimant has *never* been convicted of selling or transporting a controlled substance. Since 2006, Claimant has not had any brushes with the law and has been nothing but an upstanding citizen. Undoubtedly, unlawful activity 16 years ago does not provide a reasonable basis to account for the substantial properties that the Government is seeking to forfeit.

(3) Claimant's trademark of the word "Vidagen." According to the Government, this word is used in relation to cultivation of marijuana, and this

---

[1] Claimant was informed that the Government raided 369 vaults, seizing $86 million in cash and millions more in jewelry and other valuables. Request for Judicial Notice ("RJN"), Exh. E. These vaults were used by individuals, like Claimant, who are unrelated to USPV and the indictment against USPV. Nonetheless, the Government attempted to confiscate this cash and property based on similar allegations as in this case—that the box holders engaged in unspecified criminal wrongdoings. *Id.* Many of these owners filed suit against the Government. *Id.* Claimant is further informed that the Government in fact returned all monies and items in these vaults to all the owners—except for Claimant. Declaration of Yael Tobi ("Tobi Decl."), ¶4. As to Claimant, the Government inexplicably elected to file this conclusory deficient Complaint.

somehow supports the Government's allegation that Claimant is doing something illegal. This claim is facially baseless. The Government has not alleged that Claimant has even used this trademark, and it certainly does not allege that the trademark was used in any criminal activity or by a criminal enterprise. In any event, Vidagen means "life genetics." Its intended use was in lawful business which never came to fruition.

(4) The currency denominations. Grasping at straws, the Government also alleges that the currency denominations in Claimant's Property were somehow "consistent" with drug trafficking and money laundering (whatever that means) and that the money was rubber-banded and bundled. These allegations are vague and meaningless, and they do not support an assertion that any criminal activity occurred. Anyone keeping a substantial amount of cash (innocent or otherwise) would likely keep it in a similar manner (i.e., rubber-banded) and in similar denominations. Thus, the Ninth Circuit has rejected similar claims numerous times.

(5) Finally, the Government's main claim, that a narcotics detection canine gave a positive alert to the stored currency, is a red herring. As the Government knows, it has been scientifically proven that up to 90% of currencies in U.S. circulation detect positive for narcotics—75% in the Los Angeles area alone. Not surprisingly, there was no positive detection as to the other "precious items" seized with the cash.[2] Indeed, the Ninth Circuit has rejected forfeiture actions premised on such unreliable evidence.

In sum, the Government wants to forfeit, and not return, $340,000 in cash, along with significant additional precious valuables merely because they were stored at USPV by an individual who, 16 years ago, had minor brushes with the

---

[2] The Government ignores the fact that Claimant's other precious items—which have substantial value—were not detected by the narcotics canine. This eliminates any reasonable belief claim that these valuables had any connection to drugs or purportedly unlawful activity. Thus, they should not be subject to forfeiture and should be returned immediately.

law.  If this were enough to confiscate one's property, the constitutional rights and freedoms of United States citizens would be greatly jeopardized.  Indeed, while the Government has kept Claimant's Property for nearly a year now, the Complaint does not include a single allegation demonstrating that Claimant's Property was the proceeds of criminal conduct.  And, even more egregious, the Complaint also fails to allege the existence of any underlying or associated criminal act.

The Government's First Claim for violation of the Controlled Substances Act, fails to allege the distribution of a controlled substance by Claimant and fails to identify the alleged controlled substance and the amount distributed.

Its Second Claim for Fraudulent Racketeering is deficient on its face, failing to allege a time, date, place, or any detail of a purported fraudulent activity.

Its Third Claim for Money Laundering contains no allegations of any financial transactions involving proceeds from unlawful activity, much less that Claimant knew about any such activity.  Moreover, there are no allegations that Claimant had any intent to promote unlawful activity or knew of any transaction that was designed to conceal such activity.

The Government's Fourth Claim for Conspiracy to Launder Money additionally fails to allege an agreement to engage in any sort of monetary transaction derived from criminal activity.

Finally, what makes the Government's conduct here especially troubling is that the Government had no right to keep Claimant's Property in the first place. The Government improperly seized Claimant's Property pursuant to a search warrant (the "Warrant") that explicitly stated that (1) the officers were only to search the vaults in order to obtain the owners' identity so that they may come and claim their property; and, (2) the Warrant did not "authorize a criminal search or seizure of the contents of the safety deposit box." Thus, according to the Warrant itself, the Government was required to identify Claimant so that it could return his property to him.  Nonetheless, having obtained access to the vaults and the property

1  on those false pretenses, the Government is now arbitrarily and wrongfully

2  attempting to retain the property.

3         In sum, the Government's Complaint entirely fails to show or allege anything

4  illicit about Claimant's Property or the existence of any unlawful conduct.  The

5  Court must put a stop to this government overreach, dismiss this action with

6  prejudice, and order the return of Claimant's Property.

7  **II.    STATEMENT OF FACTS**

8         Claimant is, by all accounts, an upstanding California citizen.  About *sixteen*

9  *years ago*, Claimant had minor brushes with the law concerning personal medical

10  use and cultivation of marijuana (which is now legal in California).[3]  Declaration of

11  Marek Rudak ("Rudak Decl."), ¶3.  Claimant has no prior felony convictions. *Id.*

12  Since 2006, Claimant has had no brushes with the law, was never arrested, and was

13  never under any criminal investigation. *Id.* at ¶4.  He did not even have so much as

14  a traffic ticket.  *Id.*  Rather, since approximately 2011, Claimant has been employed

15  as a glassmith, working as a consultant for various glass brands.  *Id.* at ¶5. He has

16  assisted companies' design shops, and has engaged in the import of raw glass-

17  related materials from China. *Id.*  Claimant is also a family man, happily married to

18  a doctor. *Id.* at ¶6.

19         USPV is a company that is in the business of renting safety deposit boxes.

20  Complaint ¶ 8. USPV is known for providing what it claims to be a secure and

21  private alternative to keeping one's savings in a bank. Complaint ¶ 9. Beginning in

22  late March 2019, the United States (and the world) experienced unprecedented

23  turmoil as a result of the COVID-19 pandemic.  *See* Request for Judicial Notice

24  ("RJN"), Exh. 4.  In late 2019 and 2020, individuals' fears and mistrust of financial

25  institutions reached new heights as a result of mandated bank closures and safety

26

---

27  [3] In 2005 and in 2006, Claimant was arrested in connection with personal medical use and cultivation of medical marijuana and electrical power theft.  All charges have been dismissed.

28

1 concerns resulting from numerous riots, protests, and civil unrest. *Id.* Many feared

2 the ability to access their funds. *Id.* Some thought banks would run out of cash. *Id.*

3 Others felt they would not be able to access their cash or valuables stored at bank's

4 safety boxes due to such mandated closures. *Id.*

5      In 2020, Claimant, like many others felt it was unsafe to keep cash and gold

6 at home. Rudak Decl., ¶7. At the time, he was also uncomfortable with storing his

7 cash at a financial institution or renting a safety deposit box at a bank due to bank

8 closures and many people's inability to access their valuables. *Id.* As such, he

9 decided to rent a vault at USPV because it was a private company renting vaults in

10 Beverly Hills, a well-protected neighborhood. *Id; See also* RJN, Exh. B. Claimant

11 did not know any of the USPV owners. Rudak Decl., ¶11. He did not know that

12 USPV or any of its owners were under a criminal investigation or involved in any

13 unlawful conduct. *Id.* Claimant never had any business relationship with USPV, its

14 members, owners, or anyone associated with it (other than renting a safety deposit

15 box at USPV). *Id.*

16      On or about January 18, 2020, Claimant rented a vault at USPV, box number

17 5409. Rudak Decl., ¶8, Exh. A. In his box at USPV, Claimant placed $340,000 in

18 cash as well as miscellaneous precious items which include approximately 55 one-

19 ounce gold coins dated from 1985 to 2021 and a stack of 1-2 gram gold KITCO

20 cards, worth approximately $100,000 (collectively "Gold"). Rudak Decl., ¶9.

21 None of the items that Claimant placed in his box were the proceeds of criminal

22 activity or were used to facilitate a criminal act. *Id* at ¶10. Rather, the money and

23 Gold are Claimant's savings from his hard work and lawful earnings. *Id.*

24      In or about October 2020, Claimant registered the trademark "Vidagen."

25 Rudak Decl., ¶10. Claimant picked the name as it means "life genetics"—that is,

26 'Vida' means life in Spanish and 'Gen' is an abbreviation for genetics. *Id.*

27 Claimant had hoped to build a tissue culture lab. *Id.* Tissue culture is a propagation

28 technique that has the ability to remove disease from plants, which was also the

reason for the name—Vidagen—"life genetics." *Id*. In any event, Claimant's hopes never came to fruition. *Id*.

On March 9, 2021, USPV was indicted for Conspiracy to Launder Money, Conspiracy to Distribute Controlled Substances, Conspiracy to Structure Transactions, and Criminal Forfeiture. RJN, Exh. A. Claimant was never mentioned in the indictment. *Id*. Nor are there any allegations that Claimant is somehow related to USPV (or its owners) or has he conducted business with USPV (or its owners) other than renting the safety deposit box. *Id*.; Complaint.

On March 17, 2021, the Court issued the Warrant to search USPV's premises. RJN, Exh. B. The Warrant stated:

> This warrant does not authorize a criminal search or seizure of the content of the safety deposit boxes. In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property; . . ."

*Id*. During the search of USPV's property, amongst other things, the FBI seized all of the contents of Claimant's box, including Claimant's Property. Complaint ¶ 20. Despite the expressed language in the Warrant, the Government refuses to return Claimant's Property to him and instead has filed this action for civil forfeiture.

## III. STANDARD OF REVIEW

A motion pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Under this Rule, a district court must dismiss a claim if "there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In order to proceed with a legal action, a plaintiff is obligated "to provide the 'grounds' of his

'entitlement to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, to survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy Rule 8(a)'s pleading requirements, and a claim for relief must be stated with "brevity, conciseness, and clarity." *See* Charles A. Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In ruling on a Rule 12(b)(6) Motion, a court may consider all matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## A.   <u>Stringent Pleading Requirement in Forfeiture Actions</u>

Civil forfeiture actions are governed by the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims ("SUPP AMC"). These rules mandate that an *in rem* forfeiture action satisfy a more stringent pleading standard than that required by the FRCP and *Iqbal*. *See* FRCP SUPP AMC Rule G (setting out standards for "forfeiture action[s] in rem arising from a federal statute."). A forfeiture complaint must "state sufficiently *detailed* facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." (emphasis added) FRCP SUPP AMC Rule G(2)(f); *see also United States v. 3,168,400 in U.S. Currency*, 2017 WL 10591752 , at *3 (C.D. Cal. Dec. 5, 2017); *One White Crystal Covered Bad Tour Glove & Other Michael Jackson*

1   *Memorabilia*, 2012 WL 8467453, at *2; *United States v. Aguilar*, 782 F.3d 1101,
2   1108-09 (9th Cir. 2015).

3          In order to satisfy this requirement, the Government must plead specific facts
4   that support a belief that that the properties it seized from Claimant were proceeds
5   of a "specified unlawful activity." *See One White Crystal Covered Bad Tour Glove*
6   *& Other Michael Jackson Memorabilia*, 2012 WL 8467453, at *3. Given that this
7   action seeks forfeiture under 21 U.S.C. § 881, and given the limited allegations in
8   the complaint relating to the Claimant and his activities, the Government must
9   plead facts that support a reasonable belief that the property the Government seized
10  was exchanged or intended to be exchanged for drugs. *United States v. $215,300*
11  *U.S. Currency*, 882 F.2d 417, 418 (9th Cir. 1989); *United States v. $59,520 U.S.*
12  *Currency*, 2015 WL 12732455 (C.D. Cal. July 22, 2015)

13         Moreover, "[f]orfeiture statutes are strictly construed against the
14  government." *United States v. All Funds in Credit Suisse Private Banking Account*
15  *No. 0251-844548-6 in The Name of Alexandria Inv., LLC*, CV05-3910
16  ABCMKCX, 2005 WL 5250030, at *6 (C.D. Cal. Sept. 20, 2005). Courts are
17  "reluctant to find that a statute allows forfeiture where a plausible interpretation of
18  the statute would not allow it" *Id*. Moreover, this Circuit has recognized that civil
19  forfeiture statutes are "considered 'quasi-criminal' and implicate certain
20  constitutional rights." *United States v. Riverbend Farms, Inc.,* 847 F.2d 553, 558
21  (9th Cir.1988).

22  **IV.   ARGUMENT**

23         **A.    The Government Did Not Meet Its Burden of Showing That**
24                **Claimant's Property Was Traceable to Unlawful Activity**

25         The Government seized Claimant's Property under 18 U.S.C. § 981 and 21
26  U.S.C. § 881. Therefore, it must allege *with sufficient particularity* that the
27  property is traceable to a proscribed unlawful transaction. 18 U.S.C. § 981(a)(1)(A),
28  (C); *see also* FRCP SUPP AMC Rule G(2). Seized money is subject to forfeiture if

it was: "(1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws." *United States v. U.S. Currency, $30,060.00*, 39 F.3d 1039, 1041 (9th Cir. 1994); 21 U.S.C. § 881(a)(6). However, in the present case, none of these elements are alleged in the Complaint—certainly not with particularity.

"[T]he government must initially establish probable cause that the claimant's money was connected to drugs." *Id*. Probable cause is determined based on "'whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that the [money] was' connected to drugs." *Id*. (citing to *United States v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1282 (9th Cir.1983)). The probable cause standard also requires the government to establish more than mere suspicion. *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir.1986). "To pass the point of mere suspicion and to reach probable cause, it is necessary to demonstrate by some *credible evidence* the probability" that "the property [being seized (in this case, the money and Gold)] is involved in [a drug transaction]." *United States v. Dickerson,* 873 F.2d 1181, 1184 (9th Cir.1988); *U.S. v. $49,576.00 in U.S. Currency*, 116 F.3d 425, 427 (9th Cir. 1997) ["To sustain forfeiture of currency under 21 U.S.C. § 881(a)(6), a showing that the currency was "involved in *some* illegal activity is not enough-the government must have probable cause to believe that the property is involved in [a drug transaction]"]; *United States v. $405,089.23 U.S. Currency,* 122 F.3d 1285, 1290 (9th Cir. 1997).

Here, other than general conclusions, the Complaint is devoid of any facts (let alone detailed facts) that would remotely connect the seized property with any specified unlawful activity. *See e.g.* Complaint ¶¶ 24, 26, 28, 30. There are no allegations that suggest how the Government passes beyond the point of *mere suspicion* to support a claim of *probable cause*. In fact, even "mere suspicion" here

is a stretch.  For example, the Complaint does not provide any information as to the type and amount of the controlled substance Claimant purportedly used for an unspecified unlawful activity.  The Complaint does not allege unlawful activity other than referring vaguely to "narcotics trafficking." Complaint ¶ 24. There is no indication as to the time period any alleged criminal acts purportedly took place or who was involved in such conduct.  And, most importantly, the Complaint is silent on how the conduct purportedly generated the money and items seized by the Government (or how Claimant's Property was purportedly used to facilitate such criminal conduct).

The Government's entire case is based on Claimant's expunged misdemeanors related to medical use of marijuana from *over 16 years ago*; the packaging of the money; and the narcotics detection dog's positive alert to Claimant's money.  Importantly, as noted above, the Complaint *does not* allege that the narcotics detection dog alerted to the "precious items" (i.e. the Gold) found with the currency, which the Government also seized.  The factors relied upon by the Government are insufficient to even rise to the level of speculation, let alone probable cause.

Forfeiture actions have in fact been routinely dismissed by the Ninth Circuit when they are based on a narcotic detection dog's positive drug testing and the packaging of the money. *See e.g. $30,060.00*39, F.3d at 1041. In *U.S. Currency, $30,060.00*, the government introduced evidence that: (1) a narcotics detection dog alerted to the presence of controlled substance on money found in claimant's automobile during traffic stop; (2) the money was packaged in $1,000 bundles and corresponded to the price of two kilograms of cocaine; and (3) claimant gave false accounts of the money's source and his own employment record. *See Id.* at 1041-42.  The Ninth Circuit found such evidence insufficient to establish probable cause that the money seized was connected to drugs, as required to warrant forfeiture. *Id.*

The Ninth Circuit further acknowledged that in recent years, courts, including

1  the Ninth Circuit, "have questioned the probative value of positive dog alerts due to

2  the contamination of America's paper money supply with narcotics residue." *Id.* at

3  1042-43.  The Court noted that "this court has never held that the mere fact of a

4  narcotics dog's positive alert to a large sum of money constitutes sufficient

5  evidence to establish probable cause for forfeiture." *Id.*  The key to the court's

6  ruling was a finding that up to 75 percent of all currency in the Los Angeles area is

7  coated with traces of cocaine or other controlled substances. *Id.* at 1043. The Court

8  noted various articles and studies proving the unreliability of the positive canine

9  detection results.  *Id.* For example, in one study, of the eight samples of cash taken

10  from a police chief, a circuit judge, a state senator, a mayor, a community college

11  president, the *Orlando Sentinel* editor, a reverend, and a county chairman, six out of

12  the eight samples showed detectable amounts of cocaine that were "well within the

13  range of a drug dog's detection ability." *Id.*; *See also* RJN, Exh. F.

14       Undoubtedly, a positive dog alert may indicate that the currency has been in

15  contact with a narcotics substance or with contaminated currency at some "prior"

16  point in time. *Dickerson,* 873 F.2d at 1184.  However, the mere fact of prior

17  contamination does not establish that the currency was actually exchanged for or

18  intended to be exchanged for drugs by the person currently in possession of the

19  currency—especially when seventy-five percent of Los Angeles's paper money

20  supply is tainted with drug residue.  *$30,060.00*, 39 F.3d at 1041-43.

21       Here, the Government offered even fewer allegations to support forfeiture

22  than in the *$30,060.00* case.  No drugs were found in the safety deposit box.  No

23  drugs were detected on the precious items found with the money.  Since 2006,

24  Claimant has not been arrested for anything, let alone suspicion of drug related

25  offenses.  Claimant was never arrested for any offense related to cocaine or any

26  drugs other than medical use marijuana.  Claimant was never arrested for any

27  felony.  Claimant was never convicted of selling, distributing or trafficking any

28  drugs.  With the high likelihood that the trace amounts of cocaine were already on

the dollar bills in the vault, and the fact that the Government never alleges that Claimant was distributing cocaine, or had anything to do with cocaine, as in *$30,060*, the Government cannot show the "aggregate of facts" raises to more than a mere suspicion that the money seized from [Claimant] was connected to drugs." *Id.* at 1045.

Because the Government has failed to put forth any specific allegations sufficiently tracing Claimant's Property to unlawful conduct, the Government has failed to assert a claim supporting forfeiture.

### B. <u>The Government Failed to Assert the Existence of an Underlying Criminal Act</u>

Not only has the Government failed to allege facts showing that Claimant's Property was the proceeds of criminal conduct (or in any way connected to criminal acts), but the Government has also failed to state a claim for any of the alleged underlying criminal acts—*i.e.*, violation of the Controlled Substances Act; Fraudulent Racketeering, Money Laundering, and Conspiracy to Launder Money.

### 1. <u>The Government Fails to State a Claim for Violation of the Controlled Substances Act Warranting Forfeiture</u>

The Government has not plead sufficient factual allegations to support a claim for violation of the Controlled Substances Act. The Controlled Substances Act states that, "except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. §§ 841(a)(1), (2). In order to convict a defendant, the Government must prove that: (1) defendant knowingly distributed a controlled substance; and (2) defendant knew that it was a controlled substance or some other federally controlled substance. *United States v. Moytez-Pineda*, 312 Fed. Appx. 859, 861 (9th Cir. 2009) (citing *United States v. Vargas-Castillo*, 329

F.3d 715, 719 (9th Cir.2003)); *see also* 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

Here, the Government failed to allege that Claimant distributed a controlled substance. There are no allegations as to Claimant's knowledge of any purported distribution. And, the Complaint is silent as to the type of controlled substance or the alleged amount of such substance.

The only mention of a controlled substance was the cocaine that the state-certified narcotic detection canine found on the dollar bills in Claimant's vault. However, the Complaint fails to tie this finding to any distribution of illegal substances allegedly made by Claimant or even to any of Claimant's prior arrests from 16 years ago. Indeed, this claim is a red herring. As the Government knows, and as discussed above, most currency in the Los Angeles area is coated with traces of controlled substances. Thus, allegations based on the presence of controlled substances on currency in the Los Angeles area are insufficient to establish a claim under the Controlled Substances Act. *See $30,060.00*, 39 F.3d at 1041-43, 45.

## 2. <u>The Government Fails to Assert a Claim for Fraudulent Racketeering Warranting Forfeiture</u>

The Government has not identified specific acts or omissions upon which a claim for fraudulent racketeering could be alleged. The Complaint cites a violation of 18 U.S.C. §1961(1)(D) which states that a racketeering activity is:

"any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

The Government is required to identify specific acts or omissions upon which a claim of fraud is based by giving such details as the time, date, places, or other

details of the alleged fraudulent involvement of the defendants. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003).

On its face, this Complaint is completely devoid of any such allegations. Rather, the Government merely states a conclusion "that the defendant assets constitute or are derived from proceeds traceable to a controlled substance violation, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)." Complaint ¶ 26.

With no detail or any factual allegations supporting the alleged unlawful activity, undoubtedly the Government did not satisfy the heightened pleading requirements and has failed to assert a claim for Fraudulent Racketeering.

### 3.  The Government Fails to Assert a Claim for Money Laundering

The Complaint lacks any factual allegations to support a claim for money laundering. In order to establish a claim for money laundering under Section 1956, the Government must show that the Claimant:

> "(1) conducted a financial transaction (2) which in fact involved the proceeds of specified unlawful activity (3) knowing that the transaction involved the proceeds of specified unlawful activity. 18 U.S.C. § 1956 (a)(1).  In addition, the [government] must show that the [claimant] either (a) had the intent to promote the carrying on of specified unlawful activity or (b) knew the transaction was designed to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. 18 U.S.C. § 1956 (a)(1) (A)(i), (a)(1)(B)(i)."

*United States v. Real Prop. Located in Monrovia, California*, 217CV02155RGKAJW, 2017 WL 8232409, at *4 (C.D. Cal. Nov. 16, 2017); *see also United States v. Gough*, 152 F.3d 1172, 1173 (9th Cir. 1998).

The Government has not alleged any facts supporting any of these required elements. First, there is no mention (let alone with specificity) of any financial

transaction in which Claimant or Claimant's Property participated in that involved proceeds from alleged unlawful activity.  There is certainly no claim that Claimant had knowledge of such activities (which of course were not alleged in the first place). Second, there are no allegations asserting that Claimant had any intention to promote unlawful activity or knew of any transaction that was designed to conceal such activity.

On its face, the Complaint fails to assert a claim for money laundering, let alone with sufficient specificity.

### 4.   The Complaint Fails to Assert a Claim for Conspiracy to Launder Money That Warrants Forfeiture

The final claim for conspiracy to launder money fails for the same reasons as the underlying money laundering claim.  Additionally, the Claim is deficient as the Government failed to allege the existence of any underlying agreement to engage in an unlawful monetary transaction.  Section 1957(a) states, "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)." 18 U.S.C. § 1957(a).  "[A] violation of 18 U.S.C. § 1957(a) requires proof that Defendants agreed to engage in a monetary transaction over $10,000 derived from a criminal act." *United States v. Alghazouli*, 517 F.3d 1179, 1190 (9th Cir. 2008).

The Complaint is entirely lacking any allegations that Claimant conspired to launder money or that Claimant entered into an agreement to engage in any sort of monetary transaction derived from an alleged criminal activity. Instead, as with the rest of the claims, the Government merely makes conclusory statements without any factual support.  As such, the Government failed to assert a claim for conspiracy to launder money.

**C.**     **Claimant is an Innocent Owner and the Government Had No Basis to Forfeit His Property**

On the face of the Complaint, it is apparent that Claimant is nothing more than an innocent owner who rented a vault during the height of the COVID-19 pandemic.  Thus, Claimant's Property should have never been forfeited and the Government's conduct here is unjustifiable. 18 U.S.C. § 983(d)(1) states that, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." Furthermore, "[t]he claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). The term "innocent owner" means an owner who "did not know of the conduct giving rise to forfeiture." 18 U.S.C. § 983(d)(2)(A)(i).

Here, indisputably, Claimant "did not know of the conduct" that gave rise to the forfeiture.  As discussed in the Indictment, the conduct giving rise to the forfeiture was USPV's actions.  RJN, Exh. A.  There are no allegations that Claimant had any involvement in USPV's alleged criminal conduct giving rise to the search warrant and forfeiture.  There are no allegations that Claimant knew of USPV's illegal conduct.  There are no allegations Claimant even engaged in any business with USPV or its owners (other than renting a safety deposit box).  There are certainly no allegations that Claimant's Property was seized because of any conduct by Claimant.  Indeed, during the COVID-19 turmoil, Claimant merely stored his property in USPV's vault, as like many others, he was concerned with turmoil and the many unknowns involving financial institutions at the time.

Moreover, the Government had no legal right to forfeit Claimant's Property in the first place.  The Warrant at issue pertained to USPV's premises, *not* Claimant's box.  RJN, Ex. B. In fact, the Warrant specifically did *not* authorize a criminal search of the content of Claimant's safety deposit box or the seizure of Claimant's Property. *Id.* Rather, the FBI was required to inspect the contents of Claimant's box only for purposes of identification of its owner and then to allow the

owner to claim his property back. *Id.*

The Government's decision to concoct a narrative whereby Claimant's Property is subject to forfeiture because of alleged expunged misdemeanors that took place 16 years ago is an egregious abuse of power and a blatant violation of Claimant's fundamental constitution rights. Indeed, it is most troubling that this Verified Complaint intentionally omits the fact that prior arrests took place in 2005 and 2006, when undoubtedly this information was in the Government's possession.

For these reasons, the Complaint must be dismissed and Claimant's Property should be returned to him.

## V.    LEAVE TO AMEND SHOULD BE DENIED

Leave to amend a complaint that has been dismissed based on a Rule 12(b) motion to dismiss should not be granted if the district court determines that the pleading could not possibly be cured by the allegation of other facts, or if further amendments are likely to be futile. *United States v. Smithkline Beecham Clinical Labs.*, 245 F.3d 1048, 1052 (9th Cir. 2001); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend should be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

Here, any attempt to cure the deficiencies in the Complaint would be futile. Claimant is an innocent owner and the Government did not and cannot assert a connection between Claimant's Property and an underlying criminal activity. That is especially true in light of the express language of the Warrant, which required the Government to return Claimant's Property to him.

The Government seized Claimant's Property in March 2021 and has wrongfully deprived him of his property for nearly a year. To the extent the Government could have established some sort of connection between Claimant's Property and criminal activity, it would have and should have done so by now.

/ / /

## VI.   CONCLUSION

For the reasons stated above, Claimant Marek Rudak respectfully requests that the Court dismiss the Government's Complaint without leave to amend and order the return of Claimant's Property to Claimant.

Dated:  January 6, 2022                **MUNCK WILSON MANDALA, LLP**

By: */s/ Yael Tobi*
        Yael Tobi
        Attorney for Claimant
        MAREK RUDAK